JS 44 (Rev. 04/21)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS

SORANDA LOUIS, on behalf of herself and all others similarly situated

**(b)** County of Residence of First Listed Plaintiff: Lucie County, FL
*(EXCEPT IN U.S. PLAINTIFF CASES)*

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*
FLITTER MILZ, P.C.
Andrew M. Milz, 450 N. Narberth Avenue,Suite 101
Narberth, PA 19072, (610) 822-0781

## DEFENDANTS

Trans Union, LLC

County of Residence of First Listed Defendant: Delaware County, PA
*(IN U.S. PLAINTIFF CASES ONLY)*
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

- ☐ 1 U.S. Government Plaintiff
- ☐ 3 Federal Question *(U.S. Government Not a Party)*
- ☐ 2 U.S. Government Defendant
- ☑ 4 Diversity *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)*
*(For Diversity Cases Only)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☑ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☑ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

Click here for: Nature of Suit Code Descriptions.

**CONTRACT**
- ☐ 110 Insurance
- ☐ 120 Marine
- ☐ 130 Miller Act
- ☐ 140 Negotiable Instrument
- ☐ 150 Recovery of Overpayment & Enforcement of Judgment
- ☐ 151 Medicare Act
- ☐ 152 Recovery of Defaulted Student Loans (Excludes Veterans)
- ☐ 153 Recovery of Overpayment of Veteran's Benefits
- ☐ 160 Stockholders' Suits
- ☑ 190 Other Contract
- ☐ 195 Contract Product Liability
- ☐ 196 Franchise

**REAL PROPERTY**
- ☐ 210 Land Condemnation
- ☐ 220 Foreclosure
- ☐ 230 Rent Lease & Ejectment
- ☐ 240 Torts to Land
- ☐ 245 Tort Product Liability
- ☐ 290 All Other Real Property

**TORTS**

PERSONAL INJURY
- ☐ 310 Airplane
- ☐ 315 Airplane Product Liability
- ☐ 320 Assault, Libel & Slander
- ☐ 330 Federal Employers' Liability
- ☐ 340 Marine
- ☐ 345 Marine Product Liability
- ☐ 350 Motor Vehicle
- ☐ 355 Motor Vehicle Product Liability
- ☐ 360 Other Personal Injury
- ☐ 362 Personal Injury - Medical Malpractice

PERSONAL INJURY
- ☐ 365 Personal Injury - Product Liability
- ☐ 367 Health Care/ Pharmaceutical Personal Injury Product Liability
- ☐ 368 Asbestos Personal Injury Product Liability

PERSONAL PROPERTY
- ☐ 370 Other Fraud
- ☐ 371 Truth in Lending
- ☐ 380 Other Personal Property Damage
- ☐ 385 Property Damage Product Liability

**CIVIL RIGHTS**
- ☐ 440 Other Civil Rights
- ☐ 441 Voting
- ☐ 442 Employment
- ☐ 443 Housing/ Accommodations
- ☐ 445 Amer. w/Disabilities - Employment
- ☐ 446 Amer. w/Disabilities - Other
- ☐ 448 Education

**PRISONER PETITIONS**

Habeas Corpus:
- ☐ 463 Alien Detainee
- ☐ 510 Motions to Vacate Sentence
- ☐ 530 General
- ☐ 535 Death Penalty

Other:
- ☐ 540 Mandamus & Other
- ☐ 550 Civil Rights
- ☐ 555 Prison Condition
- ☐ 560 Civil Detainee - Conditions of Confinement

**FORFEITURE/PENALTY**
- ☐ 625 Drug Related Seizure of Property 21 USC 881
- ☐ 690 Other

**LABOR**
- ☐ 710 Fair Labor Standards Act
- ☐ 720 Labor/Management Relations
- ☐ 740 Railway Labor Act
- ☐ 751 Family and Medical Leave Act
- ☐ 790 Other Labor Litigation
- ☐ 791 Employee Retirement Income Security Act

**IMMIGRATION**
- ☐ 462 Naturalization Application
- ☐ 465 Other Immigration Actions

**BANKRUPTCY**
- ☐ 422 Appeal 28 USC 158
- ☐ 423 Withdrawal 28 USC 157

**INTELLECTUAL PROPERTY RIGHTS**
- ☐ 820 Copyrights
- ☐ 830 Patent
- ☐ 835 Patent - Abbreviated New Drug Application
- ☐ 840 Trademark
- ☐ 880 Defend Trade Secrets Act of 2016

**SOCIAL SECURITY**
- ☐ 861 HIA (1395ff)
- ☐ 862 Black Lung (923)
- ☐ 863 DIWC/DIWW (405(g))
- ☐ 864 SSID Title XVI
- ☐ 865 RSI (405(g))

**FEDERAL TAX SUITS**
- ☐ 870 Taxes (U.S. Plaintiff or Defendant)
- ☐ 871 IRS—Third Party 26 USC 7609

**OTHER STATUTES**
- ☐ 375 False Claims Act
- ☐ 376 Qui Tam (31 USC 3729(a))
- ☐ 400 State Reapportionment
- ☐ 410 Antitrust
- ☐ 430 Banks and Banking
- ☐ 450 Commerce
- ☐ 460 Deportation
- ☐ 470 Racketeer Influenced and Corrupt Organizations
- ☐ 480 Consumer Credit (15 USC 1681 or 1692)
- ☐ 485 Telephone Consumer Protection Act
- ☐ 490 Cable/Sat TV
- ☐ 850 Securities/Commodities/ Exchange
- ☐ 890 Other Statutory Actions
- ☐ 891 Agricultural Acts
- ☐ 893 Environmental Matters
- ☐ 895 Freedom of Information Act
- ☐ 896 Arbitration
- ☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision
- ☐ 950 Constitutionality of State Statutes

## V. ORIGIN *(Place an "X" in One Box Only)*

- ☑ 1 Original Proceeding
- ☐ 2 Removed from State Court
- ☐ 3 Remanded from Appellate Court
- ☐ 4 Reinstated or Reopened
- ☐ 5 Transferred from Another District *(specify)*
- ☐ 6 Multidistrict Litigation - Transfer
- ☐ 8 Multidistrict Litigation - Direct File

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing ***(Do not cite jurisdictional statutes unless diversity)***:
28 U.S.C. § 1332(d) (CAFA)

Brief description of cause:
Class action arising from data breach

## VII. REQUESTED IN COMPLAINT:

☑ CHECK IF THIS IS A **CLASS ACTION** UNDER RULE 23, F.R.Cv.P.

**DEMAND $**

CHECK YES only if demanded in complaint:
**JURY DEMAND:** ☑ Yes ☐ No

## VIII. RELATED CASE(S) IF ANY

*(See instructions):*
JUDGE ______ DOCKET NUMBER ______

DATE: September 9, 2025

SIGNATURE OF ATTORNEY OF RECORD: /s/Andrew M. Milz

**FOR OFFICE USE ONLY**

RECEIPT # ______ AMOUNT ______ APPLYING IFP ______ JUDGE ______ MAG. JUDGE ______

**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

**DESIGNATION FORM**

Place of Accident, Incident, or Transaction: Crum Lynne, PA

***RELATED CASE IF ANY:*** Case Number:______________________ Judge:________________________________

1. Does this case involve property included in an earlier numbered suit? Yes ☐
2. Does this case involve a transaction or occurrence which was the subject of an earlier numbered suit? Yes ☐
3. Does this case involve the validity or infringement of a patent which was the subject of an earlier numbered suit? Yes ☐
4. Is this case a second or successive habeas corpus petition, social security appeal, or pro se case filed by the same individual? Yes ☐
5. Is this case related to an earlier numbered suit even though none of the above categories apply? If yes, attach an explanation. Yes ☐

I certify that, to the best of my knowledge and belief, the within case ☐ **is** / ☑ **is not** related to any pending or previously terminated action in this court.

**Civil Litigation Categories**

***A. Federal Question Cases:***

- ☐ 1. Indemnity Contract, Marine Contract, and All Other Contracts)
- ☐ 2. FELA
- ☐ 3. Jones Act-Personal Injury
- ☐ 4. Antitrust
- ☐ 5. Wage and Hour Class Action/Collective Action
- ☐ 6. Patent
- ☐ 7. Copyright/Trademark
- ☐ 8. Employment
- ☐ 9. Labor-Management Relations
- ☐ 10. Civil Rights
- ☐ 11. Habeas Corpus
- ☐ 12. Securities Cases
- ☐ 13. Social Security Review Cases
- ☐ 14. Qui Tam Cases
- ☐ 15. Cases Seeking Systemic Relief ***see certification below***
- ☐ 16. All Other Federal Question Cases. *(Please specify)*:______________________

***B. Diversity Jurisdiction Cases:***

- ☐ 1. Insurance Contract and Other Contracts
- ☐ 2. Airplane Personal Injury
- ☐ 3. Assault, Defamation
- ☐ 4. Marine Personal Injury
- ☐ 5. Motor Vehicle Personal Injury
- ☐ 6. Other Personal Injury (*Please specify*):______________
- ☐ 7. Products Liability
- ☑ 8. All Other Diversity Cases: *(Please specify)* Data Breach

I certify that, to the best of my knowledge and belief, that the remedy sought in this case ☐ **does** / ☑ **does not** have implications beyond the parties before the court and ☐ **does** / ☑ **does not** seek to bar or mandate statewide or nationwide enforcement of a state or federal law including a rule, regulation, policy, or order of the executive branch or a state or federal agency, whether by declaratory judgment and/or any form of injunctive relief.

**ARBITRATION CERTIFICATION (CHECK ONLY ONE BOX BELOW)**

I certify that, to the best of my knowledge and belief:

[XXX] Pursuant to Local Civil Rule 53.2(3), this case is not eligible for arbitration either because (1) it seeks relief other than money damages; (2) the money damages sought are in excess of $150,000 exclusive of interest and costs; (3) it is a social security case, includes a prisoner as a party, or alleges a violation of a right secured by the U.S. Constitution, or (4) jurisdiction is based in whole or in part on 28 U.S.C. § 1343.

[ ] None of the restrictions in Local Civil Rule 53.2 apply and this case is eligible for arbitration.

NOTE: A trial de novo will be by jury only if there has been compliance with F.R.C.P. 38.

**IN THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| SORANDA LOUIS, *on behalf of herself and all others similarly situated,*<br><br>Plaintiff,<br><br>vs.<br><br>TRANS UNION LLC,<br>Defendant. | CIVIL ACTION<br><br>NO. |

**CLASS ACTION COMPLAINT**

## I. INTRODUCTION

1. On or around July 28, 2025, Defendant Trans Union LLC ("Trans Union") had its data breached by unauthorized actors (the "Data Breach"), who stole the highly sensitive personal identifying information ("PII") of Plaintiff and presumably thousands like her.

2. Companies such as Trans Union that handle sensitive PII owe a duty to the individuals to whom that data relates. This duty arises because it is foreseeable that the exposure of PII to unauthorized persons—and especially hackers with nefarious intentions—will result in harm to the affected individuals, including, but not limited to, the invasion of their private financial matters.

3. The harm resulting from a data and privacy breach manifests in a number of ways, including, but not limited to: (a) identity theft and financial fraud and time spent mitigating or preventing those issues; (b) exposure of a person's PII through a data breach ensures that such person will be at a substantially increased

and certainly impending risk of identity theft crimes compared to the rest of the population, potentially for the rest of their lives; and (c) lost or diminished value of a person's PII. Mitigating these risks—to the extent it is even possible to do so—requires individuals to devote significant time and money to closely monitor their credit, financial accounts, and email accounts, and take a number of additional prophylactic measures.

4. Plaintiff, on behalf of herself and the Class as defined herein, brings claims for negligence, negligence per se, breach of implied contract, unjust enrichment, and declaratory judgment, seeking damages, attorneys' fees, costs, and expenses, and appropriate injunctive and declaratory relief.

5. To recover from Defendant from these harms, Plaintiff and the Class seek damages in an amount to be determined at trial, declaratory judgment, and injunctive relief requiring Defendant to: (1) investigate and disclose, expeditiously, the full nature of the Data Breach and the types of PII accessed, obtained, or exposed by the hackers; and (2) implement improved data security practices to reasonably guard against future breaches of PII possessed by Defendant.

## II. JURISDICTION

6. This Court has jurisdiction pursuant to the Class Action Fairness Act of 2005 ("CAFA"), codified in pertinent part at 28 U.S.C. § 1332(d), because Plaintiff and at least one member of the Class, as defined below, are citizens of a different state than Defendant, there are more than 100 members of the Class, and the aggregate amount in controversy exceeds $5,000,000 exclusive of interest and costs.

7. Venue is proper in this District as the Defendant is registered to do business in Pennsylvania, and regularly conducts business in this District, including at its Crum Lynne, Delaware County, PA facility.

## III. Parties

8. Plaintiff, Soranda Louis, is a consumer and natural person presently residing in Fort Pierce, FL.

9. Defendant Trans Union is a limited liability company that regularly conducts substantial business in the Commonwealth of Pennsylvania and which has a place of business in Crum Lynne, Pennsylvania.

## IV.Facts

10. Due to the nature of its business as one of the nation's largest consumer reporting agencies, Trans Union acquires, collects, and stores the PII of Plaintiff and the Class Members.

11. On or about July 28, 2025, Trans Union experienced a significant data breach involving unauthorized access to a third-party application utilized in its U.S. consumer support operations. The breach was discovered on July 30, 2025, and subsequently disclosed in filings with state authorities, including the Maine and Texas attorneys general, on August 28, 2025.

12. The breach affected more than 4.4 million customers whose personal information was stored within the compromised application. According to disclosures, the information accessed included customers' names, dates of birth, and Social Security numbers. Notably, Trans Union stated that the breach did not

involve credit reports or core credit information; however, the exposed data elements are highly sensitive and pose substantial risks to affected individuals.

13. Trans Union's reliance on third-party vendors for operational efficiency and scale contributed to the vulnerability exploited in this incident. The unauthorized actors targeted a trusted vendor's application, leveraging the trust relationship to infiltrate Trans Union's systems. This method of attack is consistent with a broader trend in cybersecurity incidents, where hackers compromise vendors first to gain access to larger targets. Industry research indicates that such vendor-related breaches are increasingly common, with hackers exploiting the "vendor vulnerability paradox"—the more deeply firms integrate third-party partners, the more exposed they become.

14. The breach here illustrates that dynamic. It was not the product of sophisticated hacking techniques, but of the predictable weaknesses that arise when companies entrust sensitive data to outside vendors without robust oversight. By exploiting gaps in vendor security and the assumption of reliability, hackers were able to compromise millions of consumers' personal information. The incident highlights a structural problem for companies like Trans Union: outsourcing critical functions may create efficiencies, but it also multiplies points of entry for hackers and magnifies the consequences of a single failure.

15. Upon information and belief, the Data Breach is the result of Defendant's failure to implement adequate data security measures and to exercise

reasonable oversight of its vendors, including by disregarding or failing to monitor compliance with the vendor's own security recommendations.

16. Trans Union's conduct in connection with the breach demonstrates a failure to exercise reasonable care in safeguarding customer data. Despite the known risks associated with third-party vendor relationships, Trans Union did not implement sufficient controls to prevent unauthorized access or to detect the breach in a timely manner. The company's delayed disclosure and lack of transparency regarding the specific data elements involved further exacerbated the harm to class members, depriving them of the information necessary to protect themselves.

17. Trans Union's inadequate cybersecurity practices and insufficient oversight of third- party vendors directly resulted in the compromise of sensitive personal information belonging to millions of individuals. The resulting harm to class members is concrete, ongoing, and attributable to Trans Union's acts and omissions as described herein.

18. As a result of Trans Union's failure to implement and maintain adequate cybersecurity measures, including proper oversight of third-party vendors, class members have suffered and continue to suffer harm. The exposure of personally identifiable information such as names, birthdates, and Social Security numbers places affected individuals at heightened risk of identity theft, financial fraud, and other forms of PII misuse. The lost time and money associated with monitoring credit, securing accounts, and mitigating potential damage are substantial and ongoing.

19. Furthermore, the Data Breach has forced Plaintiff and Class Members to take precautionary steps, such as placing fraud alerts, freezing credit, and monitoring financial statements, all of which entail time, effort, and potential financial costs. The risk of future harm remains significant, as stolen personal information can be used or sold by malicious actors for years after the initial breach.

20. By letter dated August 26, 2025, Plaintiff learned that her PII, including, but not necessarily limited to, her date of birth and Social Security Number, had been stolen in the Data Breach.

21. Since the announcement of the Data Breach, Plaintiff has been required to spend her valuable time protecting herself against future identity theft and fraudulent transactions, including by monitoring her various accounts in an effort to detect, prevent, and resolve any misuses of her PII—time which she would not have had to expend but for the Data Breach.

22. As a result of the Data Breach, Plaintiff will continue to be at heightened and certainly impending risk for fraud and identity theft, along with their attendant monetary injuries, for years to come.

## V. Class Action Allegations

23. Plaintiff brings this action on her own behalf and on behalf of a class pursuant to Rule 23 of the Federal Rules of Civil Procedure.

24. Plaintiff brings this action on behalf of the putative class defined as follows (the "Class"):

> All individuals within the United States of America to whom Trans Union sent notice in or after August 2025 advising

that their personal information was accessed in an unauthorized cyber incident.

25. Excluded from the Class are the following individuals and/or entities: Defendant and Defendant's parents, subsidiaries, affiliates, officers and directors, and any entity in which Defendant has a controlling interest; all individuals who make a timely election to be excluded from this proceeding using the correct protocol for opting out; and all judges assigned to hear any aspect of this litigation, as well as their immediate family members.

26. Plaintiff reserves the right to amend the above definitions or to propose subclasses in subsequent pleadings and motions for class certification.

27. The Class for whose benefit this action is brought is so numerous that joinder of all members is impracticable. It is believed, and therefore averred, that the class numbers 4.4 million by Trans Union's own estimate.

28. There are questions of law and fact common to the members of the Class that predominate over questions affecting only individuals, including but not limited to:

A. Whether Defendant had a legal duty to Plaintiff and the Class to exercise due care in collecting, storing, using, and/or safeguarding their PII;

B. Whether Defendant knew or should have known of the susceptibility of its data security systems to a data breach;

C. Whether Defendant's security procedures and practices to protect its systems were reasonable in light of the measures recommended by data security experts;

D. Whether Defendant's failure to implement adequate data security measures allowed the Data Breach to occur;

E. Whether Defendant failed to comply with its own policies and applicable laws, regulations, and industry standards relating to data security;

F. Whether Defendant adequately, promptly, and accurately informed Plaintiff and Class Members that their PII had been compromised;

G. How and when Defendant actually learned of the Data Breach;

H. Whether Defendant's conduct, including its failure to act, resulted in or was the proximate cause of the breach of its systems, resulting in the loss of the PII of Plaintiff and Class Members;

I. Whether Defendant adequately addressed and fixed the vulnerabilities which permitted the Data Breach to occur;

J. Whether Defendant engaged in unfair, unlawful, or deceptive practices by failing to safeguard the PII of Plaintiff and Class Members and/or by failing to timely notify Plaintiff and the Class Members of the same;

K. Whether Plaintiff and Class Members are entitled to actual and/or statutory damages and/or whether injunctive, corrective and/or declaratory relief and/or accounting is/are appropriate as a result of Defendant's wrongful conduct;

L. Whether Plaintiff and Class Members are entitled to restitution as a result of Defendant's wrongful conduct; and,

M. Whether Plaintiff and the Class Members are entitled to damages.

29. A class action is superior to other available methods for the fair and efficient adjudication of this matter.

30. A class action will cause an orderly and expeditious administration of the claims of the Class and will foster economies of time, effort, and expense.

31. Plaintiff's claims are typical of the claims of the members of the Class.

32. The questions of law and/or fact common to the members of the Class predominate over any questions affecting only individual members.

33. Plaintiff does not have interests antagonistic to those of the Class.

34. The Class, of which Plaintiff is a member, is readily identifiable through Defendant's own records and the mailing of the "Notice of Data Incident."

35. Plaintiff will fairly and adequately protect the interests of the Class and she has retained competent counsel experienced in the prosecution of consumer class action litigation. Class Counsel have investigated and identified potential claims in the action; have a great deal of experience in handling consumer class actions, other complex litigation, and claims of the type asserted in this action.

36. Courts regularly find that Flitter Milz, PC has the requisite experience and skill in prosecuting consumer class actions, including against this Defendant. *See, e.g., Norman v. Trans Union, LLC*, U.S.D.C. E. D. Pa. No. 18-cv-05225-GAM (noting at July 21, 2025 final approval hearing that Flitter Milz, PC "certainly has the experience and the ability and a really a national reputation based upon their longtime presence in this field"); *Lantych v. Flagship Resort Development Corp.*, ATL-L-000744-23 (N.J. Super. July 23, 2024) (certified on contest; "[Flitter Milz, PC] possess considerable experience in the litigation of class action lawsuits.").

37. The prosecution of separate actions by individual members of the Class (1) would run the risk of inconsistent or varying adjudications that would establish incompatible standards of conduct for the Defendant in this action or (2) would create the risk that adjudications with respect to individual members of the class would as a practical matter be dispositive of the interests of the other members not parties to the adjudications or substantially impair or impede their ability to protect

their interests. Prosecution as a class action will eliminate the possibility of repetitious litigation.

38. This class action is also appropriate for certification because Defendant has acted or refused to act on grounds generally applicable to Class Members, thereby requiring the Court's imposition of uniform relief to ensure compatible standards of conduct toward the Class Members and making final injunctive relief appropriate with respect to the Class in its entirety.

39. Defendant's policies and practices challenged herein apply to and affect Class Members uniformly and Plaintiff's challenge of these policies and practices hinges on Defendant's conduct with respect to the Class in its entirety, not on facts or law applicable only to Plaintiff.

40. Defendant has acted and/or refused to act on grounds that generally apply to the Class making injunctive and/or declaratory relief appropriate with respect to the Class under Federal Rule of Civil Procedure 23(b)(2).

41. Members of the Class are ascertainable. Class membership is defined using objective criteria, and Class members may be readily identified through Defendant's books and records, including the files implicated in the Data Breach.

42. Plaintiff does not anticipate any difficulty in the management of this class litigation.

## VI. CLAIMS FOR RELIEF

### COUNT I – NEGLIGENCE

43. Plaintiff, on behalf of herself and the Class, reasserts and incorporates herein the allegations contained in the preceding and following paragraphs.

44. At all times herein relevant, Defendant owed Plaintiff and Class Members a duty of care, *inter alia,* to act with reasonable care to secure and safeguard their PII and to use commercially reasonable methods to do so. Defendant took on this obligation upon accepting and storing the PII of Plaintiff and Class Members in its computer systems and on its networks.

45. Among these duties, Defendant was expected:

a. to exercise reasonable care in obtaining, retaining, securing, safeguarding, deleting, and protecting the PII in its possession, custody, or control;

b. to protect Plaintiff's and Class Members' PII using reasonable and adequate security procedures and systems that were/are compliant with industry-standard practices;

c. to implement processes to detect the Data Breach quickly and to timely act on warnings about data breaches; and to promptly notify Plaintiff and Class Members of any data breach, security incident, or intrusion that affected or may have affected their PII.

46. Defendant knew that the PII was private and confidential and should be protected as private and confidential and, thus, Defendant owed a duty of care not to subject Plaintiff and Class Members to an unreasonable risk of harm because they were foreseeable and probable victims of any inadequate security practices.

47. Defendant knew, or should have known, of the risks inherent in collecting and storing PII, the vulnerabilities of its data security systems, and the importance of adequate security.

48. Defendant knew about numerous, well-publicized data breaches.

49. Defendant knew, or should have known, that its data systems and networks did not adequately safeguard Plaintiff's and Class Members' PII.

50. Defendant was in the position to ensure that its systems and protocols were sufficient to protect the PII that Plaintiff and Class Members had entrusted to it.

51. Defendant breached its duties to Plaintiff and Class Members by failing to provide fair, reasonable, or adequate computer systems and data security practices to safeguard their PII.

52. Because Defendant knew that a breach of its systems could damage thousands of individuals, including Plaintiff and Class Members, Defendant had a duty to adequately protect its data systems and the PII contained therein.

53. Defendant also had independent duties under laws that required Defendant to reasonably safeguard Plaintiff's and Class Members' PII and promptly notify them about the Data Breach.

54. Defendant breached its general duty of care to Plaintiff and Class Members in, but not necessarily limited to, the following ways:

a. by failing to provide fair, reasonable, or adequate computer systems and data security practices to safeguard the PII of Plaintiff and Class Members;

b. by failing to timely and accurately disclose that Plaintiff's and Class Members' PII had been improperly acquired or accessed;

c. by failing to adequately protect and safeguard the PII by knowingly disregarding standard information security principles, despite obvious risks, and by allowing unmonitored and unrestricted access to unsecured PII;

d. by failing to provide adequate supervision and oversight of the PII with which it was and is entrusted, in spite of the known risk and foreseeable likelihood of breach and misuse, which permitted an unknown third party to gather PII of Plaintiff and Class Members, misuse the PII and intentionally disclose it to others without consent;

e. by failing to consistently enforce security policies aimed at protecting Plaintiff's and the Class Members' PII;

f. by failing to implement processes to detect data breaches, security incidents, or intrusions quickly; and,

g. by failing to encrypt Plaintiff's and Class Members' PII and monitor user behavior and activity in order to identify possible threats.

55. Defendant's willful failure to abide by these duties was wrongful, reckless, and grossly negligent in light of the foreseeable risks and known threats.

56. As a proximate and foreseeable result of Defendant's grossly negligent conduct, Plaintiff and Class Members have suffered damages and are at imminent risk of additional harms and damages.

57. There is a close causal connection between Defendant's failure to implement security measures to protect the PII of Plaintiff and Class Members and the harm suffered, or risk of imminent harm suffered by Plaintiff and Class Members.

58. Plaintiff's and Class Members' PII was accessed as the proximate result of Defendant's failure to exercise reasonable care in safeguarding such PII by adopting, implementing, and maintaining appropriate security measures.

59. Defendant's wrongful actions, inactions, and omissions constituted (and continue to constitute) common law negligence.

60. The damages Plaintiff and Class Members have suffered (as alleged above) and will suffer were and are the direct and proximate result of Defendant's grossly negligent conduct.

61. As a direct and proximate result of Defendant's negligence and negligence per se, Plaintiff and Class Members have suffered and/or will suffer injury, including but not limited to:

a. theft of their PII;

b. unauthorized charges to their bank accounts;

c. costs associated with canceling and ordering new payment cards;

d. time spent reporting fraudulent activity;

e. costs associated with requesting credit freezes;

f. costs associated with the detection and prevention of identity theft;

g. costs associated with purchasing credit monitoring and identity theft protection services;

h. lowered credit scores resulting from credit inquiries following fraudulent activities;

i. costs associated with time spent and the loss of productivity from taking time to address and attempt to ameliorate, mitigate, and deal with the actual and future consequences of the Data Breach;

j. the imminent and certainly impending injury flowing from potential fraud and identity theft posed by their PII being placed in the hands of criminals;

k. damages to and diminution in value of their PII directly or indirectly entrusted to Defendant with the mutual understanding that Defendant would safeguard Plaintiff's and Class members' data against theft and not allow access and misuse of their data by others; and

l. continued risk of exposure to hackers and thieves of their PII, which remains in Defendant's possession and is subject to further breaches so long as Defendant fails to undertake appropriate and adequate measures to protect Plaintiff and Class members.

62. As a direct and proximate result of Defendant's negligence, Plaintiff and Class Members are entitled to damages, including compensatory, punitive, and/or nominal damages, in an amount to be proven at trial.

## COUNT II – NEGLIGENCE *PER SE*

63. Plaintiff, on behalf of herself and the Class, reasserts and incorporates herein the allegations contained in the preceding and following paragraphs.

64. Section 5 of the FTC Act prohibits "unfair . . . practices in or affecting commerce" including, as interpreted and enforced by the FTC, the unfair act or practice by companies such as Trans Union of failing to use reasonable measures to protect PII. Various FTC publications and orders also form the basis of Defendant's duties.

65. Defendant violated Section 5 of the FTC Act by failing to use reasonable measures to protect customers' PII and not complying with the industry standards. Defendant's conduct was particularly unreasonable given the nature and amount of PII it obtained and stored and the foreseeable consequences of a data breach.

66. Plaintiff and Class Members are consumers within the class of persons Section 5 of the FTC Act was intended to protect.

67. Moreover, the harm that has occurred is the type of harm that the FTC Act was intended to guard against. Indeed, the FTC has pursued over fifty enforcement actions against businesses which, as a result of their failure to employ reasonable data security measures and avoid unfair and deceptive practices, caused the same harm suffered by Plaintiff and Class Members.

68. Defendant's violation of Section 5 of the FTC Act constitutes negligence *per se*.

69. The Gramm Leach Bliley Act ("GLBA") states "that each financial institution has an affirmative and continuing obligation to respect the privacy of its customers and to protect the security and confidentiality of those customers' nonpublic personal information." 15 U.S.C. § 6801(a).

70. Defendant violated the GLBA and the Safeguards Rule (16 C.F.R. Part 314) by failing to use reasonable measures to protect PII and not complying with the industry standards. Defendant's conduct was particularly unreasonable given the nature and amount of PII it obtained and disclosed and the foreseeable consequences of a data breach.

71. Plaintiff and Class Members are consumers within the class of persons the GLBA and the Safeguards Rule was intended to protect.

72. Moreover, the harm that has occurred is the type of harm that the GLBA and the Safeguards Rule were intended to guard against.

73. As a direct and proximate result of Defendant's negligence, Plaintiff and Class Members have suffered injuries, including those identified above.

74. As a direct and proximate result of Defendant's negligence, Plaintiff and Class Members have been injured as described herein and above, and are entitled to damages, including compensatory, punitive, and nominal damages, in an amount to be proven at trial.

## COUNT III – BREACH OF IMPLIED CONTRACT

75. Plaintiff, on behalf of herself and the Class, reasserts and incorporates herein the allegations contained in the preceding and following paragraphs.

76. Trans Union required Plaintiff and Class Members to provide their PII as a condition for using Trans Union's services.

77. In doing so, Plaintiff and Class Members entered into implied contracts with Trans Union by which Defendant agreed to safeguard and protect such PII, keep such PII secure and confidential, and to timely and accurately notify Plaintiff and Class Members if their PII had been breached, compromised, or stolen.

78. When entering into these implied contracts, Plaintiff and Class Members reasonably believed and expected that Trans Union's data security practices complied with its statutory and common law duties to adequately protect Plaintiff's and Class Members' PII and to timely notify them of a data breach.

79. Indeed, implicit in these exchanges was a promise by Defendant to ensure the PII of Plaintiff and Class members in its possession would be used to provide the agreed-upon services and that Trans Union would take adequate measures to protect Plaintiff's and Class Members' PII and timely notify them in the event of a data breach.

80. It is clear by these exchanges that the parties intended to enter into implied agreements supported by mutual assent. Plaintiff and Class Members would not have disclosed their PII to Defendant but for the prospect of Defendant's promise of services. Conversely, Trans Union presumably would not have taken Plaintiff's and Class Members' PII if it did not intend to provide Plaintiff and Class Members services through Defendant.

81. Plaintiff and Class Members would not have provided their PII to Trans Union had they known that Defendant would not safeguard their PII as promised, or provide timely notice of a data breach.

82. Plaintiff and Class Members fully performed their obligations under their implied contracts with Trans Union.

83. Trans Union breached its implied contracts with Plaintiff and Class Members by failing to safeguard Plaintiff's and Class Members' PII and by failing to provide them with timely and accurate notice of the Data Breach.

84. The losses and damages Plaintiff and Class Members sustained, include, but are not limited to:

a. Theft of their PII;

b. Costs associated with requested credit freezes;

c. Costs associated with the detection and prevention of identity theft and unauthorized use of the PII;

d. Costs associated with purchasing credit monitoring and identity theft protection services;

e. Lowered credit scores resulting from credit inquiries following fraudulent activities;

f. Costs associated with time spent and the loss of productivity from taking time to address and attempt to ameliorate, mitigate, and deal with the actual and future consequences of the Data Breach – including finding fraudulent charges, cancelling and reissuing cards,

enrolling in credit monitoring and identity theft protection services, freezing and unfreezing accounts, and imposing withdrawal and purchase limits on compromised accounts;

g. The imminent and certainly impending injury flowing from potential fraud and identity theft posed by their PII being placed in the hands of cyber-criminals;

h. Damages to and diminution in value of their PII entrusted, directly or indirectly, to Defendant with the mutual understanding that Defendant would safeguard Plaintiff's and Class Members' data against theft and not allow access and misuse of their data by others; and

i. Continued risk of exposure to hackers and thieves of their PII, which remains in Defendant's possession and is subject to further breaches so long as Defendant fails to undertake appropriate and adequate measures to protect Plaintiff's and Class Members' PII.

85. As a direct and proximate result of Trans Union's breach of contract, Plaintiff and Class Members are entitled to damages, including compensatory, punitive, and/or nominal damages, in an amount to be proven at trial.

## COUNT IV – UNJUST ENRICHMENT

86. Plaintiff, on behalf of herself and the Class, reasserts and incorporates herein the allegations contained in the preceding and following paragraphs.

87. Plaintiff and Class members have an interest, both equitable and legal, in the PII about them that was conferred upon, collected by, and maintained by Trans Union and that was ultimately stolen in the Data Breach. This PII was conferred on Trans Union in most cases by third parties but in some instances directly and/or indirectly by Plaintiff and Class members themselves.

88. Trans Union benefitted from the conferral upon it of the PII pertaining to Plaintiff and Class members and by its ability to retain and use that information. Trans Union understood that it was in fact so benefited. Indeed, Trans Union's business would not exist but for the need for collect, maintain, and sell Plaintiff's and Class members' PII to facilitate transactions between lenders and borrowers.

89. Trans Union also understood and appreciated that the PII pertaining to Plaintiff and Class members was private and confidential and its value depended upon Trans Union maintaining the privacy and confidentiality of that PII.

90. But for Trans Union's assurances and commitment to maintain the privacy and confidentiality of sensitive data—including by adequately overseeing its vendors—Plaintiff's and Class Members' PII would not have been transferred to and entrusted with Trans Union. Further, had Trans Union disclosed that either its own data security measures or those of its vendors were inadequate, Trans Union would not have been permitted to continue in operation by regulators, its shareholders, and participants in the marketplace.

91. As a result of Trans Union's wrongful conduct as alleged in this Complaint, including its implementation of inadequate data security measures,

Trans Union has been unjustly enriched at the expense of, and to the detriment of, Plaintiff and Class members. Among other things, Trans Union continues to benefit and profit from the collection, maintenance, and sale of the PII while its value to Plaintiff and Class members has been diminished.

92. Trans Union's unjust enrichment is traceable to, and resulted directly and proximately from, the conduct alleged herein, including the compiling and use of Plaintiff's and Class members' sensitive PII, while at the same time failing to maintain that information secure from intrusion and theft by hackers and identity thieves.

93. Under the common law doctrine of unjust enrichment, it is inequitable for Trans Union to be permitted to retain the benefits it received, and is still receiving, without justification, from Plaintiff and Class members in an unfair and unconscionable manner. Trans Union's retention of such benefits under circumstances making it inequitable to do so constitutes unjust enrichment.

94. The benefit conferred upon, received, and enjoyed by Trans Union was not conferred officiously or gratuitously, and it would be inequitable and unjust for Trans Union to retain the benefit.

95. Plaintiff is without an adequate remedy at law.

96. As a direct and proximate result of Defendant's conduct, Plaintiff and Class members have suffered and will continue to suffer other forms of injury and/or harm, including those identified above.

97. Defendant should be compelled to disgorge into a common fund or constructive trust, for the benefit of Plaintiff and Class members, proceeds that they unjustly received from them.

## COUNT V – DECLARATORY RELIEF

98. Plaintiff, on behalf of herself and the Class, reasserts and incorporates herein the allegations contained in the preceding and following paragraphs.

99. Under the Declaratory Judgment Act, 28 U.S.C. § 2201, et seq., this Court is authorized to enter a judgment declaring the rights and legal relations of the parties and to grant further necessary relief. Furthermore, the Court has broad authority to restrain acts that are tortious and violate the terms of the federal laws and regulations described herein.

100. An actual controversy has arisen in the wake of the Data Breach regarding Plaintiff's and Class members' PII and whether Defendant is currently maintaining data security measures adequate to protect Plaintiff and Class members from further data breaches that compromise their PII. Plaintiff alleges that Defendant still possesses Plaintiff's and Class members' PII, and that Defendant's data security measures remain inadequate. Furthermore, Plaintiff and Class members continue to suffer injury as a result of the compromise of their PII and remain at imminent risk that further compromises of their PII will occur in the future.

101. Under its authority pursuant to the Declaratory Judgment Act, this Court should enter a judgment declaring, inter alia, the following:

a. Defendant owes a legal duty to secure consumers' PII under the common law and Section 5 of the FTC Act; and

b. Defendant continues to breach this legal duty by failing to employ reasonable data security measures to safeguard Plaintiff's and Class members' PII.

102. This Court also should issue corresponding prospective injunctive relief requiring Defendant to employ adequate security protocols consistent with law and industry standards to protect consumers' PII.

103. If an injunction is not issued, Plaintiff and Class members will suffer irreparable injury, and lack an adequate legal remedy, in the event of another data breach at Trans Union. The risk of another such breach is real, immediate, and substantial. If another breach at Trans Union occurs, Plaintiff and Class members will not have an adequate remedy at law because the resulting injuries are not readily quantified, and they will be forced to bring multiple lawsuits to rectify the same conduct.

104. The hardship to Plaintiff and Class members if an injunction is not issued exceeds the hardship to Defendant if an injunction is issued. Plaintiff and Class members will likely be subjected to substantial identity theft and other damage. On the other hand, the cost to Defendant of complying with an injunction by employing reasonable prospective data security measures is relatively minimal. Defendant has a pre-existing legal obligation to employ such measures.

105. Issuance of the requested injunction will only benefit the public by possibly preventing another data breach at Trans Union, thus eliminating the additional injuries that would result to Plaintiff and consumers whose confidential information would be further compromised.

## VII. Prayer For Relief

**WHEREFORE**, Plaintiff, on behalf of herself and each member of the proposed Class, respectfully requests that the Court enter judgment in their favor and for the following specific relief against Defendant as follows:

1. That the Court declare, adjudge, and decree that this action is a proper class action and certify the proposed class, including the appointment Plaintiff Louis as Class Representative and of Plaintiff's counsel as Class Counsel;
2. For an award of damages, as allowed by law in an amount to be determined;
3. That the Court enjoin Defendant, ordering them to cease from unlawful activities;
4. For equitable relief enjoining Defendant from engaging in the wrongful conduct complained of herein pertaining to the misuse and/or disclosure of Plaintiff's and Class Members' PII, and from refusing to issue prompt, complete, and accurate disclosures to Plaintiff and Class Members;

5. For injunctive and other equitable relief as is necessary to protect the interests of Plaintiff and Class Members, including but not limited to an Order:
   a. prohibiting Defendant from engaging in the wrongful and unlawful acts described herein;
   b. requiring Defendant to protect, including through encryption, all data collected through the course of business in accordance with all applicable regulations, industry standards, and federal, state, or local laws;
   c. requiring Defendant to implement and maintain a comprehensive information security program designed to protect the confidentiality and integrity of Plaintiff's and Class Members' PII;
   d. requiring Defendant to engage independent third-party security auditors and internal personnel to run automated security monitoring, simulated attacks, penetration tests, and audits on Defendant's systems periodically;
   e. requiring Defendant to meaningfully educate all Class Members about the threats they face due to the loss of their confidential PII to third parties, as well as the steps affected individuals must take to protect themselves.
6. For prejudgment interest on all amounts awarded;

7. For an award of attorneys' fees, costs, and litigation expenses, as allowed by law; and

8. For all other Orders, findings, and determinations identified and sought in this Complaint.

## VIII. JURY DEMAND

Plaintiffs demand trial by jury as to all claims and defenses.

Dated: September 9, 2025

*s/Andrew M. Milz*
FLITTER MILZ, P.C.
Cary L. Flitter
Andrew M. Milz
Jody Thomas López-Jacobs
Edward M. Flitter
450 N. Narberth Ave., Suite 101
Narberth, PA 19072
Tel.: (610) 822-0781
Fax.: (833) 775-3450
cflitter@consumerslaw.com
amilz@consumerslaw.com
jlopez-jacobs@consumerslaw.com
eflitter@consumerslaw.com

Attorneys for Plaintiff and the Class

# UNITED STATES DISTRICT COURT

for the

Eastern District of Pennsylvania

SORANDA LOUIS, on behalf of herself and all others similarly situated,

*Plaintiff*

v.

TRANS UNION LLC

*Defendant*

Civil Action No.

## SUMMONS IN A CIVIL ACTION

To: *(Defendant's name and address)* TRANS UNION LLC
1510 Chester Pike
Crum Lynne, PA 19022

A lawsuit has been filed against you.

Within 21 days after service of this summons on you (not counting the day you received it) — or 60 days if you are the United States or a United States agency, or an officer or employee of the United States described in Fed. R. Civ. P. 12 (a)(2) or (3) — you must serve on the plaintiff an answer to the attached complaint or a motion under Rule 12 of the Federal Rules of Civil Procedure. The answer or motion must be served on the plaintiff or plaintiff's attorney, whose name and address are: Andrew M. Milz
450 N. Narberth Ave., Suite 101
Narberth, PA 19072
Tel.: (610) 822-0781

If you fail to respond, judgment by default will be entered against you for the relief demanded in the complaint. You also must file your answer or motion with the court.

*CLERK OF COURT*

Date: 09/09/2025

*Signature of Clerk or Deputy Clerk*

Civil Action No.

**PROOF OF SERVICE**

***(This section should not be filed with the court unless required by Fed. R. Civ. P. 4 (l))***

This summons for *(name of individual and title, if any)* ____________________
was received by me on *(date)* ____________ .

❒ I personally served the summons on the individual at *(place)* ____________________
____________________ on *(date)* ____________ ; or

❒ I left the summons at the individual's residence or usual place of abode with *(name)* ____________
____________________ , a person of suitable age and discretion who resides there,
on *(date)* ____________ , and mailed a copy to the individual's last known address; or

❒ I served the summons on *(name of individual)* ____________________ , who is
designated by law to accept service of process on behalf of *(name of organization)* ____________
____________________ on *(date)* ____________ ; or

❒ I returned the summons unexecuted because ____________________ ; or

❒ Other *(specify)*:
.

My fees are $ ________ for travel and $ ________ for services, for a total of $ 0.00 .

I declare under penalty of perjury that this information is true.

Date: ____________

____________________
*Server's signature*

____________________
*Printed name and title*

____________________
*Server's address*

Additional information regarding attempted service, etc: